1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY LEWIS ABUANAR,                Case No.   2:21-cv-00347-KJM-JDP (HC)

12                    Petitioner,

13          v.                             FINDINGS AND RECOMMENDATIONS

14   S. PEERY,

15                    Respondent.

16

17          Petitioner Anthony Lewis Abuanar seeks a writ of habeas corpus under 28 U.S.C. § 2254.

18   ECF No. 2.  He alleges that: (1) the evidence was insufficient to sustain his conviction for gross

19   vehicular manslaughter; (2) the trial court erred in denying his motion to suppress evidence from

20   a blood draw because the warrant lacked probable cause; (3) the abstract of judgment is incorrect

21   because gross vehicular manslaughter while intoxicated is not a violent felony; and (4) he has an

22   unknown claim that he has not been able to raise because he lacks access to the law library.

23   Respondent has answered the petition, ECF No. 17, and petitioner has declined to file a traverse.

24   For the reasons stated below, I recommend that the petition be denied.

25                                    **Background**

26          I have reviewed the background summary articulated by the state appellate court on direct

27   appeal.  It is correct and I reproduce it here:

28

1

On September 12, 2017, Michael Cesspooch was riding his bicycle when defendant abruptly swerved his truck off the road striking and killing Cesspooch. After driving away, defendant pulled off into a nearby gravel lot, turned his lights off, and stopped his truck behind an 18-wheeler. Witnesses approached defendant and told him he had just hit someone. Defendant responded, "[i]t's okay. There's nothing wrong. It's okay." "I'm going back." Defendant then accelerated out of the lot when he saw a police car driving his way. This led to a five-mile police chase during which defendant drove over 100 miles an hour, failed to stop at multiple stop signs, and hit an electrical box. Defendant eventually held a white object out of his truck indicating surrender and officers took him into custody. When officers asked his name, defendant said his name was George Henry. Defendant told officers he "blacked out" and officers described him as "sweating heavily," "excited," and having "uncontrollable movements." A judge issued a search warrant for defendant's blood. The toxicology report showed several drugs in defendant's system, including a high amount of methamphetamine.

Oroville Police Officer Ali Khan and Detective Raymond Stott testified about defendant's appearance on the night of the incident. Officer Khan said defendant appeared "excited," "sweat[ed] heavily," had "uncontrollable movements" and "fast speech." Officer Khan also testified defendant sang a song in the back of the patrol car and initially lied about his name. When asked by the prosecutor if Officer Khan had seen effects like this before, he responded, "I have [¶] . . . [¶] [n]ormally for people who are under the influence of a controlled substance or stimulant." Detective Stott testified defendant appeared "incoherent" and "didn't seem to understand the questions."

The prosecution also played and entered into evidence Officer Khan's body-worn camera video from that night. Defendant's truck could be heard crashing into a patrol car on the video and defendant could be heard saying he "blacked out." Officer Khan explained defendant also appeared to be excited, sweating, and breathing hard in the video.[1]

The prosecution called Sarah Porter, a forensic scientist, to testify about the effects of methamphetamine on the body. Porter first noted defendant's toxicology report indicated methamphetamine, tramadol, lidocaine, and carboxy delta-9 THC (marijuana). The therapeutic range for methamphetamine is .02 to .05 milligrams per liter and Porter testified that the amount in defendant's system indicated abuse and would likely have an effect on him. The

---

[1][Footnote in original text:] Defendant did not provide the video or the transcript of the video on appeal. Defendant states in his brief that the crash occurred because his truck was not in park and it rolled into Officer Khan's patrol car. However, during trial, Officer Khan testified defendant first crashed into a patrol car then failed to put his truck in park before leaving the vehicle. Once his truck was dislodged from that patrol car, it rolled into Officer Khan's patrol car. Officer Khan's testimony is consistent with the warrant stating defendant "ramm[ed]" a patrol car. As such, we resolve this issue consistent with Officer Khan's testimony.

second phase of methamphetamine abuse includes drowsiness, paranoia, hallucinations, and can cause a person to pass out.  Porter stated the other drugs in his blood likely did not have an effect on defendant due to their low levels.

Porter testified the most common type of vehicle crashes involving individuals under the influence of methamphetamine are single-vehicle, drive-off-the-road-type accidents.  After viewing the body-worn camera video, Porter testified, "[j]ust with regard to that particular video, I would say there may be, there may be some indicators that the—or some indicators that this person is potentially being affected by a drug such as methamphetamine."

ECF No. 18-8 at 2-3.

## Discussion

### I.      Legal Standards

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition.  *See Harrington v. Richter*, 562 U.S. 86, 97 (2011).  To decide a § 2254 petition, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) ("Because, here, neither the court of appeal nor the California Supreme Court issued a reasoned opinion on the merits of this claim, we look to the trial court's decision."); *McCormick v. Adams*, 621 F.3d 970, 975-76 (9th Cir. 2010) (reviewing the decision of the court of appeal, which was last reasoned decision of a state court); *Gill v. Ayers*, 342 F.3d 911, 917 n.5 (9th Cir. 2003) ("Because the California Supreme Court denied review of Gill's habeas petition without comment, we look through the unexplained California Supreme Court decision to the last reasoned decision . . . as the basis for the state court's judgment.") (internal quotations omitted).

Under AEDPA, a petitioner may obtain relief on federal habeas claims that have been "adjudicated on the merits in state court proceedings" only if the state court's adjudication resulted in a decision (1) "contrary to, or [that] involved an unreasonable application of, clearly

3

1    established Federal law, as determined by the Supreme Court of the United States" or (2) "based

2    on an unreasonable determination of the facts in light of the evidence presented in the State court

3    proceeding."  28 U.S.C. § 2254(d).

4    **II.    Analysis**

5    **A.  Sufficiency of the Evidence**

6    Petitioner argues that insufficient evidence supports his conviction for gross vehicular

7    manslaughter while intoxicated.  The state appellate court rejected this claim in a reasoned

8    decision:

9    Defendant argues the evidence was insufficient to establish gross
     negligence to support his conviction for gross vehicular
10   manslaughter while intoxicated.  We disagree.  "'When considering
     a challenge to the sufficiency of the evidence to support a
11   conviction, we review the entire record in the light most favorable
     to the judgment to determine whether it contains substantial
12   evidence—that is, evidence that is reasonable, credible, and of solid
     value—from which a reasonable trier of fact could find the
13   defendant guilty beyond a reasonable doubt.'  [Citation.]  '[T]he
     relevant question is whether, after viewing the evidence in the light
14   most favorable to the prosecution, any rational trier of fact could
     have found the essential elements of the crime beyond a reasonable
15   doubt.'" (*People v. Lewis* (2009) 46 Cal. 4th 1255, 1289.)

16   A conviction for gross vehicular manslaughter while intoxicated
     requires a finding of gross negligence.  (Pen. Code,2 § 191.5, subd.
17   (a).)  "Gross negligence is the exercise of so slight a degree of care
     as to raise a presumption of conscious indifference to the
18   consequences.  [Citation.]  'The state of mind of a person who acts
     with conscious indifferences to the consequences is simply, "I don't
19   care what happens." '  [Citation.]  The test is objective: whether a
     reasonable person in the defendant's position would have been
20   aware of the risk involved."  (*People v. Bennett* (1991) 54 Cal.3d.
     1032, 1036.)  Courts evaluate gross negligence in vehicular
21   manslaughter cases by considering, "'the level of the defendant's
     intoxication, the manner of driving, or other relevant aspects of the
22   defendant's conduct resulting in the fatal accident.'"  (*Id.* at p.
     1039.)  The finding of gross vehicular manslaughter while
23   intoxicated is "based on the overall circumstances surrounding the
     fatality."  (*Id.* at p. 1040.)

24   In *Bennett*, the defendant and two friends were drinking all
25   afternoon when defendant decided to drive.  (*People v. Bennett*,
     *supra*, 54 Cal. 3d at pp. 1034-1035.)  One friend rode with
26   defendant and the other followed in his own car.  (*Id.* at p. 1034.)
     While driving, defendant weaved in and out of traffic.  (*Ibid.*)  After
27   passing several cars on a blind curve, defendant lost control of the
     car causing it to go off the road and roll over five or six times
28   killing his passenger.  (*Id.* at pp. 1034-1035.)  The defendant's level

4

of intoxication played an integral role in finding gross negligence. (*Id.* at p. 1038.) "'One who wilfully (sic) consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed, reasonably may be held to exhibit a conscious disregard of the safety of others.'" (*Ibid.*)  The court held there was sufficient evidence to support the conviction for gross vehicular manslaughter while intoxicated.  (*Id.* at p. 1040.)

Defendant's case is similar to Bennett.  The evidence presented at trial supports the conclusion that defendant was consciously indifferent to the consequences of his actions.  Defendant was under the influence of methamphetamine at the time he caused the fatal incident.  The expert testified the level of methamphetamine in defendant's system indicated abuse.  The abusive level of methamphetamine in defendant's system caused impairment, such as drowsiness, paranoia, and hallucinations.  Indeed, as the expert testified, drivers under the influence of methamphetamine commonly cause incidents of the nature involved here—single-vehicle, drive-off-the-road incidents.  Only in this case, when defendant drove off the road, he hit the victim who was on his bicycle.  Like in *Bennett*, the high level of a stimulant in defendant's system supports the trial court's finding of gross negligence because it demonstrates a conscious disregard for the safety of others.

Defendant also relies on *Nicolas* and *Leitgeb* to argue he was not grossly negligent.  The defendant in *Nicolas* was found grossly negligent when she crashed into a car at 80 miles an hour killing the driver of that car.  (*People v. Nicolas* (2017) 8 Cal. App. 5th 1165, 1169-1170, 1172.)  Evidence showed traffic had been at a complete stop for 20 to 30 seconds before the crash.  (*Id.* at p. 1170.)  There was no evidence the defendant attempted to take any evasive action before the crash.  (*Id.* at p. 1172.)  In the 17 minutes before the crash, defendant sent and received 14 text messages and answered two phone calls.  (*Id.* at p. 1170.)  After the crash, the defendant did not assist the victim -- instead she asked for her phone.  (*Ibid.*)  The court found the jury's finding of gross negligence was supported by substantial evidence.  (*Id.* at p. 1171.)

Also, in *Leitgeb*, the court found the defendant acted with gross negligence when he veered across a corner in his car and hit a victim who was standing in a safety zone.  (*People v. Leitgeb* (1947) 77 Cal. App. 2d 764, 769-770.)  The court found no condition on the road that would have inhibited the defendant's view of the pedestrian and therefore "the only reasonable explanation of defendant's failure to see the decedent is that he was not exercising even the slightest degree of care."  (*Id.* at p. 770.)

Defendant's inattention to the bicyclist, just like the inattention to traffic in *Nicolas* and the inattention to the pedestrian in *Leitgeb*, shows defendant's conscious indifference.  Defendant testified he did not remember hitting the bicyclist, evidencing his lack of attention.  Not only did defendant testify to not seeing the bicyclist,

5

but after witnesses told defendant he hit a person with his truck,
defendant drove away—further demonstrating his conscious
indifference, like the defendant in *Nicolas* who requested her phone
instead of assisting the victim.

Defendant argues his methamphetamine use and postcollision
conduct cannot support a finding of gross negligence and that the
accident alone does not justify gross negligence.  Not so.  The trier
of fact is to consider, "all relevant circumstances."  (*People v.
Bennett*, *supra*, 54 Cal. 3d at p. 1038.)  Additionally, the court in
*Nicolas* explicitly said postcrime actions and statements are
relevant considerations when determining gross negligence.
(*People v. Nicolas*, *supra*, 8 Cal. App. 5th at p. 1172.)  While *Von
Staden* does suggest the mere fact of a traffic accident does not
show gross negligence, the court held "gross negligence can be
shown by the manner in which the defendant operated the vehicle,
that is, the overall circumstances (rather than the mere fact) of the
traffic law violation."  (*People v. Von Staden* (1987) 195 Cal. App.
3d 1423, 1427.)  Here, the surrounding circumstances of the
incident—the abusive level of methamphetamine, hitting a
bicyclist, failing to render aid, fleeing from police, ramming a
police car, and lying to an officer are all part of "the overall
circumstances" that show defendant's conscious indifference and
gross negligence.

Accordingly, we conclude the verdict is support[ed] by substantial
evidence.

ECF No. 18-8 at 8-11.  The California Supreme Court issued a summary denial.  ECF No. 18-12.

In reviewing the sufficiency of evidence to support a conviction, the question is "whether,
viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*,
443 U.S. 307, 319 (1974).  If the evidence supports conflicting inferences, the reviewing court
must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and
the court must "defer to that resolution."  *Id.* at 326.  A jury's credibility determination is
generally not subject to review during post-conviction proceedings.  *Schlup v. Delo*, 513 U.S.
298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally
beyond the scope of review.").  The federal habeas court determines the sufficiency of the
evidence in reference to the substantive elements of the criminal offense as defined by state law.
*Jackson*, 443 U.S. at 324 n.16.

Here, the appellate court reasonably determined that sufficient evidence established that
petitioner was grossly negligent.  It referenced the expert testimony showing that the level of

1   methamphetamine in petitioner's system was indicative of abuse and evidence of petitioner's

2   indifference to being told that he had struck someone with his car.  The petition does not raise any

3   colorable argument as to why the evidence relied upon the appellate court was false or

4   misconstrued.  Rather, it alleges only that petitioner's motion to suppress the evidence obtained in

5   his blood draw should have been granted.  ECF No. 2 at 7.  That issue will be addressed below.

6   Here, I conclude that a rational trier of fact faced with the evidence cited by the appellate court,

7   could have found petitioner grossly negligent.  This claim should be denied.

8                        **B.  Fourth Amendment Claim**

9          Petitioner alleges that his Fourth Amendment rights were violated when the trial court

10  denied his motion to suppress evidence obtained in a blood draw.  He claims that the warrant used

11  to obtain the blood draw lacked probable cause.  The appellate court rejected this claim:

12            Defendant contends the trial court erroneously denied his motion to
              suppress evidence from the blood draw because the warrant lacked
13            probable cause.  The People assert there was probable cause to
              support the warrant, and even if there was not, the officer acted in
14            good faith and the evidence should not be suppressed.  We
              conclude the warrant was supported by probable cause; as such, we
15            do not discuss the good faith exception.

16            . . .

17            Oroville Police Detective Shane Carpenter applied for a "DUI
              Blood Draw" search warrant the night of the incident.  The warrant
18            application stated in whole: "The arrest was based on the following
              circumstances that were witnessed by me or, where indicated, were
19            witnessed by another officer who informed me of the circumstance.
              On 9/12/2017, at approximately 2027 hours, [defendant] . . . was
20            driving on Feather River Blvd. when he struck a pedestrian riding a
              bicycle.  [Defendant] pulled over and told a witness that he had hit
21            someone on a bicycle.  As Officers arrived on scene [defendant]
              took off in the vehicle he was driving.  The vehicle pursuit ended
22            with [defendant] being arrested but not after ramming a patrol
              vehicle and lying to [an] Officer about his name.  [Defendant] is
23            exhibiting common objective signed [sic] of being under the
              influence of some type of narcotic."  The magistrate issued the
24            warrant.

25            At a motion to suppress hearing, the court denied the motion and
              found probable cause supported the warrant.  The court found the
26            magistrate could have drawn several reasonable inferences from the
              warrant to make a finding of probable cause.  The factors included
27            the time of night, the fact that defendant acknowledged he hit
              someone, fled from the police, rammed a police car, lied about his

28

name, and exhibited common objective signs of being under the influence of a stimulant.

When reviewing a trial court's denial of a motion to suppress, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal. 4th 354, 362.)

The Fourth Amendment to the Constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  A magistrate must decide whether probable cause exists to issue a search warrant.  (*People v. Scott* (2011) 52 Cal. 4th 452, 483.)  Probable cause is, "'a state of facts as would lead a man of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused.'"  (*People v. Hurtado* (2002) 28 Cal. 4th 1179, 1188-1189.)  "'[Probable] cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"  (*People v. Costello* (1988) 204 Cal. App. 3d 431, 446.)

A blood draw is a search under the Fourth Amendment.  (*Birchfield v. North Dakota* (2016) 579 U.S. ___ [195 L.Ed.2d 560, 574-575].)  The Supreme Court has always been firm in its position that a search warrant for a blood draw is preferable.  "In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so."  (*Missouri v. McNeely* (2013) 569 U.S. 141, 152 [185 L.Ed.2d 696, 707].)  When an officer does obtain a search warrant, courts presume the warrant is valid because such warrants may only be issued upon a showing of probable cause.  (*Walcyzk v. Rio* (2d Cir. 2007) 496 F.3d 139, 155-156.)  "Courts have a 'strong policy favoring search by warrant rather than upon other allowable basis.'  [Citations.]  For this reason, when, as here, the police do obtain a warrant, that warrant is presumed valid." (*People v. Amador* (2000) 24 Cal. 4th 387, 393.)

Detective Carpenter obtained a search warrant for a blood draw, and as such, we presume the warrant is valid; however, we review the evidence to determine if probable cause existed when the magistrate issued the warrant.  In determining whether probable cause existed, we consider the totality of the circumstances.  (*Illinois v. Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548].)  There are several factors in this case, taken together, that establish probable cause.  These factors include: defendant hit a person, left the scene of the accident without rendering aid, fled from police, rammed a police car, lied to officers about his identity, and exhibited common signs of being under the influence of a stimulant.  These factors indicate a substantial chance of criminal activity; in

fact, they show defendant likely committed multiple criminal actions while under the influence. Defendant exhibited a consciousness of guilt in that he fled from capture and lied to officers, indicating something other than inadvertence caused defendant to hit the victim. Further, not only did defendant hit someone while driving, he also caused property damage when he hit a patrol car. This also shows defendant did not inadvertently hit the victim, but that something else was causing him to drive unsafely for more than an isolated period. Combined with his abnormal behavior, probable cause supported the detective's belief that it may have been drug use. Considering the totality of the circumstances, there is sufficient evidence for a magistrate to find probable cause.

Defendant disputes there was probable cause indicated in the warrant because the warrant consisted of conclusory statements and lacked the officer's basis of knowledge. The court, however, relied on other factors relevant to the totality of the circumstances inquiry when making its decision, including the circumstances surrounding the crash, as well as defendant's resulting behavior. Its reliance on these other factors was sufficient to support its finding of probable cause.

Defendant further cites several cases where courts found probable cause to support a blood draw and argues the circumstances of his collision did not rise to the level found sufficient in those cases. But defendant fails to cite one case where a court did not find probable cause. Defendant cites to Chapel and contends, "the fact of the collision was insufficient to establish probable cause that evidence of a crime would be found in [defendant's] blood." (Citing *U.S. v. Chapel* (9th Cir. 1995) 55 F.3d 1416.) *Chapel* does not stand for that proposition. (*Id.* at p. 1417.) The only issue in *Chapel* was whether officers had to arrest the defendant before drawing blood without a warrant, which it decided was not required. (*Ibid.*) The *Chapel* court made no determination as to probable cause. (*Id.* at p. 1420.) As such, defendant's argument is without support.

In the other cases defendant cites, the defendants were not involved in multiple traffic collisions and did not exhibit the consciousness of guilt defendant exhibited here. In Tennessee, the reviewing court upheld the trial court's probable cause determination by pointing to the defendant's unsafe driving and his common objective signs of intoxication. (*People v. Tennessee* (1970) 4 Cal. App. 3d 788, 792.) The unsafe driving consisted of the defendant weaving in between lanes three times and stopping too far into an intersection on a red light. (*Id.* at p. 790.) Here, defendant clearly displayed unsafe driving. He hit and killed a bicyclist, led police on a five-mile high-speed pursuit, and hit one patrol car. Likewise, in *Trapane*, the court found probable cause to arrest a drunk driving suspect who displayed common objective signs of intoxication despite the officer never seeing the suspect drive. (*People v. Trapane* (1991) 1 Cal. App. 4th Supp. 10, 12, 14.) In our case, officers observed defendant's unsafe driving and noted defendant displayed common signs of being under the influence of a

1    stimulant.  (*Id.* at pp, 12, 14.)  As such, the cases cited by defendant
2    plainly demonstrate probable cause supported the search warrant
     obtained here.

3        Accordingly, the trial court did not err in denying the motion to
4        suppress.

5    ECF No. 18-8 at 4-8.  The California Supreme Court rejected the claim when it summarily denied

6    the petition for review.  ECF No. 18-12.

7        No relief lies for this claim because, under the Supreme Court's decision in *Stone v.*

8    *Powell*, 428 U.S. 465, 494 (1976), a habeas petitioner's Fourth Amendment claims are barred if

9    he had a full and fair opportunity to litigate them below.  "The relevant inquiry is whether

10   petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even

11   whether the claim was correctly decided."  *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir.

12   1996).  Here, petitioner was afforded a full and fair opportunity to litigate whether the warrant

13   was supported by probable cause, both before the trial court and on direct appeal.

14                  **C.  Abstract of Judgment**

15       Petitioner's third claim is that the abstract of judgment should be corrected to reflect that

16   gross vehicular manslaughter while intoxicated is not a violent felony.  ECF No. 2 at 8.  This

17   claim is moot because the state court of appeal has agreed with petitioner in its decision and

18   directed that the abstract of judgment be changed.  ECF No. 18-8 at 11-12.

19                  **D.  Unknown Claim**

20       Finally, petitioner alleges that he has a fourth, unknown claim that he cannot articulate

21   without additional access to the law library.  ECF No. 2 at 10.  Insofar as this claim is unknown

22   and not before me, it cannot warrant habeas relief.  To the extent petitioner believes that his

23   constitutional rights have been violated by limited law library access, he may file a separate

24   section 1983 action raising that issue.

25       Accordingly, it is RECOMMENDED that the petition, ECF No. 2, be DENIED.

26       These findings and recommendations are submitted to the United States District Judge

27   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

28   after being served with these findings and recommendations, any party may file written

                                    10

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    May 12, 2023

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

11